**(123 So. 275)**

**AIZENSHTAT v. THOMASON. (8 Div. 658.)**

Court of Appeals of Alabama. June 29, 1929.

Mitchell & Hughston, of Florence, for appellant.

Bradshaw & Barnett, of Florence, for appellee.

---

[1] Ante, p. 257.

BRICKEN, P. J. The substance of the complaint is that appellant, on July 7, 1926, went to the home of plaintiff, who was a married woman and alleged as being "far gone pregnant," in the absence of her husband, and without making himself known, went upon the doorsteps without permission and demanded to know where plaintiff's husband was; that she told defendant her husband was at work, leaving every morning at 6 o'clock, which defendant knew; that thereupon defendant, "talking in a boisterous, threatening and mad manner, having entered the doorstep of plaintiff's house, she requested him to leave, this he refused to do immediately without any legal cause or good excuse, and persisted in talking to plaintiff in a boisterous and threatening and mad manner, and said: 'Tell your husband to stay at home this evening. I am going to have a warrant sworn out for him and put him in jail and send him to the penitentiary.'" It is alleged that this wrongful conduct of defendant frightened plaintiff, and as a proximate consequence thereof she had a nervous chill, and was made sick, was confined to her bed, and had a miscarriage, etc.

Whether or not the complaint was subject to any of the grounds of demurrer assigned, we do not decide. In the brief some asserted defects, not pointed out by demurrer, are mentioned, but the grounds actually assigned are not argued with sufficient insistence to warrant a review.

Plaintiff's version of the affair was to this effect: On the day in question, July, 1926, "defendant came to my house at that time between nine and eleven o'clock in the morning. He asked for my husband and I told him he had gone to work. * * * He said tell my husband to stay at home, that he would have a warrant sworn out for him and he would put him in jail, and he said he would send him to the penitentiary if he could. I did not invite him or ask him to come on the doorstep. That was the premises my husband had rented from him. I said I would tell my husband and I asked him to leave. He appeared to be mad because he looked that way. He stood there a few minutes and went off. He did not continue to talk and just stood there. I was frightened and about the time he left I was in a nervous condition, and I kind o' fainted and had something like a nervous chill. * * * The next I knew I was on the bed. I stayed in bed all day and that night and the next day I was sick. Aizenshtat came there on Wednesday and I remained in bed till I went to the hospital September 1st. I had- a doctor Saturday night after that Wednesday. I was suffering. The doctor came several times and I went to his office several times. I had Dr. Simpson and Dr. Blakemore. * * * I had an operation for a miscarriage. * * * I got sick at the time Aizenshtat came out there and had the conversation, and I continued sick until I went to the hospital. By being sick I mean menstruation, and I finally lost the baby." She further testified that her husband was arrested the following day, and that she went to the jail, where he was kept for about two hours, to see him; and that she had been pregnant about a month and a half at the time of defendant's alleged trespass. Further, that Dr. Blakemore gave her medicine to try to stop the flow, but that it had no effect. From other testimony it appears that the prescription for this medicine was given August 27th, and that the medicine was called emmenagogue. Plaintiff's medical witness, who performed the operation, estimated, though not positively, the length of her pregnancy at 2½ months.

Medical witnesses for both sides testified pro and con on the question of the miscarriage as the result of fright, and on the question of the effect of the drug emmenagogue. Those for plaintiff that fright, or emotional stress, alone, might produce abortion, and that the drug was efficient when properly administered to suppress menstruation. On the other hand, those for defendant testified that fright or emotional stress alone would not produce abortion, and that the very purpose of the drug was to increase menstruation and thus to bring about an abortion.

■ Over objection plaintiff was permitted to bring out on the cross-examination of defendant that defendant did have plaintiff's husband arrested on the day following the alleged trespass. In ruling on the admissibility of this matter the trial court stated that it was competent only to corroborate plaintiff's version of the affair, rebutting defendant's denial that he used the language complained of or conducted himself in a belligerent man-

ner. And later in the oral charge the court reiterated this statement. In this the court erred. However limited, the sole fact remains with the jury that defendant did in fact cause the husband to be arrested. If wrongful, it was the gist of a separate and distinct cause of action. Unexplained, it would tend to impress the jury as being unjustified. That the merits of it could not be gone into, even if defendant had sought to do so in an effort to show justification, is too clear to require argument.

In the oral charge the court used these expressions to which defendant reserved exceptions: (1) "Now there is no contention on the part of the defendant that anything else brought about the abortion or miscarriage of the plaintiff except that prescription." (2) "Physical personal injury may be produced through a strong emotion of the mind."

The excerpt numbered (1) was error. It was a charge upon the effect of the evidence in violation of the statute. Code 1923, § 9507.

Defendant's (appellant's) contention must be construed to have been that no conduct of his caused the miscarriage, and he should not have been put in the position of resting his defense alone upon what the jury concluded as to the effect of the prescription.

The second excerpt, while stating a principle declared by some of the authorities, was in this case erroneous. The only "physical personal injury" complained of was the alleged miscarriage suffered by plaintiff. As we have shown, the testimony as to whether a miscarriage or abortion could be produced by fright or emotional stress was in conflict. It was a question for the jury. The effect of the quoted instruction, under the circumstances, was to say that the opinion of plaintiff's medical witnesses on the question was the correct one.

We refrain from any expression of opinion as to the sufficiency of the evidence raised by the request for the affirmative charge.

For the errors indicated, the judgment will be reversed, and the cause remanded.

Reversed and remanded.